■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARIA GRAJALES, Also Known as MARIA ORTIZ, Appellant.— Appeal by the defendant from a judgment of the Supreme Court, Queens County (Pitaro, J.), rendered January 17, 1985, convicting her of criminal possession of a controlled substance in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial (Cooperman, J.), after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed, and the case is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

Contrary to the findings of the hearing court, we conclude that the recovery of two bags of cocaine from the apartment in which the defendant was staying by two Immigration and Naturalization Service (hereinafter INS) investigators was unlawful.

The record of the suppression hearing reveals that two INS investigators, pursuing a tip concerning the presence of one or more illegal aliens at a certain address, arrived at and were permitted to enter an apartment in which the defendant and her four codefendants were present. When asked by the investigators to exhibit documents indicating that they were lawfully present in the United States, the defendant and three of her codefendants were unable to comply. Accordingly, the investigators decided to detain these four individuals and to transport them to their office for further questioning. Pursuant to this plan, one of the INS investigators accompanied the defendant, who was dressed in pajamas, into a bedroom so that she could gather some clothes and get dressed for the trip.

While the hearing testimony is contradictory with respect to the issue, it further appears that the investigators obtained permission to conduct a limited search of the premises for immigration documents. The investigator who accompanied the defendant to the bedroom then asked her if she had any documents in the room. She replied in the affirmative and indicated toward a dresser drawer from which the investigator recovered a group of documents, including several valid passports, one of which was the defendant's. However, he did not examine the documents and continued to insist that the defendant get dressed. When the defendant subsequently pointed toward one of her blouses in the bedroom closet, the investigator removed the garment for her and discovered a white plastic bag containing what later proved to be cocaine hanging in the spot next to it. He seized this bag, along with a second bag of cocaine subsequently found on the floor of the closet. No illegal aliens were ever found in the apartment. In our view, the bags of cocaine should have been suppressed.

Assuming that the investigators in fact obtained limited permission to search the premises for documents, we conclude that this limited consent, as well as the legal basis for detaining the defendant, dissipated upon the recovery of the valid passports from the dresser. The investigators testified that the sole focus of their investigation was to determine the immigration status of the several defendants present at the apartment. The only information which they had received concerning the subject premises was to the effect that one or more illegal aliens might be residing there.

Under these circumstances and absent any exigency, it was incumbent upon the investigator to examine the documents immediately upon receiving them to determine the defendant's status. Indeed, when the investigator was supplied with the very documents which were the sole object of his inquiry, his failure to promptly examine them, and his insistence that the defendant dress herself so that she could be transported for further questioning due to her initial failure to produce valid immigration papers, strikes us as both illogical and impermissible. The only excuse offered for the failure to immediately examine the passports was the investigator's desire to "expedite things" by having the defendant get dressed and return to the living room, where his partner could then examine the documents. According to the investigator, such a procedure would be expeditious in that, if the defendant's passport were not valid, she would already be dressed and ready for transport to the INS office.

Again, this assertion is illogical, for it is clear that the most expeditious procedure would have been to immediately examine the passports and determine whether it was in fact necessary to dress and transport the defendant at all. Moreover, we perceive no exigency which would render the delay in reviewing the documents reasonable. The investigator never testified, nor is there any basis in the record for concluding, that he feared his partner might be in danger while guarding the four codefendants and that his failure to look at the documents was motivated by a desire to promptly rejoin his colleague. Indeed, the record belies such notion. In any event, it is obvious that any such concern on the part of the investigator could have been expeditiously allayed by his prompt return to his partner upon recovering the desired passports. Hence, we are compelled to conclude that the investigator's actions in failing to review the documents and in continuing to detain defendant after receiving them were neither reasonable nor justified under the circumstances, and the contraband recovered pursuant to this continued unlawful detention must be suppressed.

Additionally, we disagree with the hearing court's finding that the first bag of cocaine was properly seized pursuant to a valid search of the area within the defendant's immediate control. Even if the continued detention of the defendant had been proper, there was no evidentiary basis upon which the investigator reasonably could have believed that such a search was necessary for his own safety (see, People v Gokey, 60 NY2d 309; cf., People v Smith, 59 NY2d 454; People v Johnson, 59 NY2d 1014; People v Jakakas, 110 AD2d 660). Similarly, we conclude that the recovery of the second bag of cocaine, which the hearing court upheld under the "plain view" doctrine, was also improper, as the investigator testified that he walked past the area several times without noticing it and that the lighting in the room was so poor that he had to bend down and examine the bag on the closet floor before he could determine the nature of its contents.

In view of our conclusion that the physical evidence must be suppressed and the indictment must be dismissed pursuant to the foregoing analysis, we need not reach the defendant's remaining contentions. Bracken, J. P., Kunzeman, Spatt and Harwood, JJ., concur.